IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| HENRY and DORY TALLENT, ) | |
| ) | |
| Plaintiffs; ) | |
| ) | |
| vs. ) | 2:12-cv-3719-LSC |
| ) | |
| BAC HOME LOANS and BANK ) | |
| OF AMERICA, N.A., ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION

## I.  Introduction

Before the Court is a Motion to Dismiss, filed by the defendant, Bank of America, N.A. ("BANA" or "Defendant"[1]). (Doc. 9.) The issues raised in Defendant's motion have been fully briefed by all parties, and are now ripe for decision. For the reasons described below, Defendant's Motion to Dismiss is due to be GRANTED.

## II. Background

---

[1] Bank of America, N.A. is the successor by merger to BAC Home Loans Servicing, LP. Although both entities are named as defendants, because Bank of America, N.A. and BAC Home Loans are now a single, consolidated entity, this Court will refer only to BANA as the defendant.

### A. Procedural History

Henry and Dory Tallent ("Plaintiffs"), along with four other unrelated couples, originally filed an action against BANA on March 14, 2012. *See* Doc. 1 in *Prickett v. BAC Homeloans Servicing, LP*, 2:12-cv-826-LSC. On June 4, 2012, BANA moved to dismiss every claim by all ten plaintiffs under Federal Rule of Civil Procedure 12(b)(6). Before ruling on BANA's motion, the Court determined, after seeking input from the parties, that the ten plaintiffs were improperly joined under Federal Rule of Civil Procedure 20(a). Accordingly, the Court ordered the original action severed into five independent cases, mooted BANA's first motion to dismiss, and instructed Plaintiffs to file an amended complaint setting out only their individualized claims for relief in this newly created action. Pursuant to the Court's directive, Plaintiffs filed an amended complaint on January 13, 2013 (the "Complaint"). (Doc. 8.) In the Complaint, Plaintiffs allege that after they defaulted or encountered difficulties meeting obligations on their mortgage, BANA improperly serviced their loan and defectively processed their modification application. Based on these alleged improprieties, Plaintiffs assert eleven separate causes of action: (1) wrongful foreclosure; (2) fraud; (3) breach of contract; (4) breach of implied covenant of good faith and fair dealing; (5) intentional infliction of emotional distress; (6) negligent

and/or wanton hiring, training and supervision; (7) negligence; (8) wantonness; (9) unjust enrichment; (10) slander of title; and (11) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq*. BANA renewed its Motion to Dismiss on February 12, 2013, asking the Court to dismiss all eleven claims for relief set out in the Complaint. (Doc. 9.)

### B. Facts[2]

Plaintiffs allege that after falling behind on their mortgage payments in early 2009, they contacted their loan servicer, BANA, to seek a modification. (Doc. 8 ¶ 9.) They claim that on June 4, 2009, a BANA representative informed them over the phone that they were pre-qualified for a loan modification and instructed them to provide certain documentation. (*Id.* ¶ 11.) After supplying the requested documents, Plaintiffs allege that a BANA representative called them on July 14, 2009, to inform them that their requested modification had been approved. (*Id.* ¶ 13.) A few days later, Plaintiffs received a loan modification packet in the mail, which they completed and returned along with a check in the amount of $855.87 as "good faith funds." (*Id.* ¶ 14.)

---

[2] For purposes of this opinion, the facts are accepted as alleged in Plaintiffs' Complaint. *See Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). Recitation of the facts alleged by Plaintiffs is not to be construed as a verification that the allegations are true.

Plaintiffs began making reduced payments pursuant to the alleged modification agreement in September 2009[3] and continued for the next five months. (*Id.* ¶ 15–16.) Although BANA accepted the reduced payments, the amounts were apparently not applied to the loan, and on March 3, 2010, Plaintiffs received a letter from BANA informing them that their modification had not been approved. (*Id.* ¶ 16, 17, 22.) When Plaintiffs contacted BANA, they were initially told the letter was in error and should be disregarded. (*Id.* ¶ 18.) However, it soon became clear that BANA did not consider Plaintiffs to be operating under a modification agreement. BANA contacted Plaintiffs several times in April and May of 2010 to request additional information and documentation. (*Id.* ¶ 19–20.) Additionally, in May, Plaintiffs were informed that BANA's records indicated that they were 17 payments behind. (*Id.* ¶ 20.) When Plaintiffs called to inquire as to why their payments were not being applied to the loan, a BANA representative informed them the money was being held in a "fees due" account. (*Id.* at 23.) These events eventually culminated in BANA initiating foreclosure proceedings against Plaintiffs.[4] (*Id.* ¶ 7.)

---

[3] The Complaint states that the first payment was sent on 9/15/2011. This date appears to be in error since Plaintiffs claim, in the same paragraph, that the check cleared the bank on 10/6/2009. Moreover, September 2009 is consistent with the logical sequence of events set out in the Complaint.

[4] The Complaint does not provide a date foreclosure proceedings were initiated or any other information related to the foreclosure of their home.

### III.     Standard

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted. "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)). In addition, all "reasonable inferences" are drawn in favor of the plaintiff. *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002).

To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint "does not need detailed factual allegations;" however, the "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).[5] The plaintiff must plead "enough facts to state a claim

---

[5] In *Bell Atlantic Corp. v. Twombly*, the U.S. Supreme Court abrogated the oft-cited standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt

that is plausible on its face." *Id.* at 570. Unless a plaintiff has "nudged [his] claims across the line from conceivable to plausible," the complaint "must be dismissed." *Id.*

"[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (quoting *Marsh v. Butler County*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)). And "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Therefore, the U.S. Supreme Court suggested that courts adopt a "two-pronged approach" when considering motions to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)

---

that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" set forth in *Conley v. Gibson*, 355 U.S. 41 (1957). *Bell Atl. Corp.*, 550 U.S. at 560-63. The Supreme Court stated that the "no set of facts" standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563.

(quoting *Iqbal*, 556 U.S. at 664).  Importantly, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* (quoting *Iqbal*, 556 U.S. at 682).

## IV. Discussion

### A. Count Eleven: RESPA

Plaintiffs allege that BANA is liable under RESPA because it failed to respond in a proper and timely way to the Plaintiffs' "qualified written request" (QWR) for information related to their mortgage account. RESPA establishes certain actions which must be followed by entities or persons responsible for servicing federally related mortgage loans, including responding to borrower inquires. *See* 12 U.S.C. § 2605. Specifically at issue here is § 2605(e), which provides that a loan servicer, upon receipt of a QWR, must provide "a written response acknowledging receipt of the correspondence" within 5 business days, *id.* § 2605(e)(1)(A), and must take action on the QWR within 30 days. *Id.* § 2605(e)(2). Defendant argues that Plaintiffs' RESPA claim is due to be dismissed for three reasons: (1) Plaintiffs did not allege that they submitted a QWR and thus have not demonstrated that RESPA required a response, (2) Plaintiffs did not plead how any alleged request satisfied RESPA's statutory

requirements, and (3) Plaintiffs do not identify specific damages suffered as a result of BANA's alleged RESPA violation. The Court will address these in turn.

A loan servicer's obligation to provide information under § 2605(e) only applies after it "receives a *qualified written request* from the borrow (or agent of the borrower)." 12 U.S.C. § 2605(e)(1)(A) (emphasis added). Accordingly, to adequately state a claim that a loan servicer violated its duty to timely respond under § 2605(e), a plaintiff must first allege that a QWR meeting the statutory definition was actually submitted. Plaintiffs four-paragraph RESPA count fails to make any such factually-based allegations. The sole references to a QWR are found in paragraphs 92 and 93 of the Complaint:

> 92. Each of the Plaintiffs (and their attorney's) written requests for information about their account and correction of the Defendants numerous errors were "qualified written requests" within the meaning of RESPA.
>
> 93. The defendant failed to respond in a proper and timely way to the Plaintiffs "qualified written requests" for information about, and corrections to, their mortgage account, in violation of 12 U.S.C. § 2605(e).

(Doc. 8 ¶¶ 92, 93.) The problem with these conclusory statements—which fail to identify a specific request actually made—is that they are entirely unsupported by the factual allegations in the Complaint. Indeed, the Court has performed a detailed

review of each factual allegation asserted in the Complaint, and is unable to identify a single factual reference to any written request submitted by Plaintiffs. The Supreme Court made clear in Twombly that "[a] formulaic recitation of the elements of a cause of action" is not enough to survive a motion to dismiss. *Twombly*, 550 U.S. at 555. Rather, a plaintiff must set out "factual allegations" which are sufficient to "raise a right to relief above the speculative level." *Id*. Plaintiffs complaint is void of any facts establishing that a QWR was ever submitted to BANA, and accordingly, Plaintiffs have failed to adequately state a claim for relief under RESPA.

    Moreover, even if the conclusory statements above were sufficient to establish that a QWR was in fact submitted, the facts, as plead, still fail to demonstrate that Plaintiffs request contained the detailed information required by the statute. A request only "qualifies" under RESPA if three conditions are met: (1) it is in writing, (2) it includes or allows the servicer to identify "the name and account of the borrower," and (3) it "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). To establish these requirements were met, the best practice is for a plaintiff to attach a copy of the QWR submitted along with their complaint. Where

plaintiffs fail to provide a copy of the QWR itself, federal courts have routinely held that Plaintiffs must plead facts showing that the written request provided the detail necessary to qualify under the statute. *See, e.g.*, *Lucero v. Diversified Inv. Inc.*, 2010 WL 3463607, at *4 (S.D. Cal. August 31, 2010) ("[B]ecause [the plaintiffs] do not allege the contents of the QWR or attach it to their Complaint, it is unclear whether Plaintiffs included enough information for the servicer to identify them, or asked for information covered by 12 U.S.C. § 2605."); *Williams v. Am.'s Servicing Co.*, 2011 WL 1060652 (M.D. Fla. Mar. 22, 2011) (dismissing complaint because plaintiffs did not allege "when they sent the QWR . . . [or] that the QWR contained sufficient information to enable defendant to determine the 'name and account of the borrower'"); *Carrillo v. Bank of New York*, 2009 WL 5708925, at *4 (S.D. Fla. Dec. 22, 2009) (dismissing RESPA claim because plaintiff did not "allege to whom his request was addressed . . . [or] the subject matter of the written correspondence"); *Correa v. BAC Home Loans Servicing LP*, 2012 WL 1176701, at *7 (M.D. Fla. Apr. 9, 2012) (finding that a *pro se* plaintiff had "barely allege[d] sufficient facts" where she stated the date the correspondence was mailed, to whom it was addressed, and that it was labeled as a qualified written request).

A careful review of Plaintiffs' Complaint fails to reveal any factual allegations

that would establish they submitted a written request containing even one of the requirements mandated by RESPA, much less all three. Nonetheless, Plaintiffs argue in their response that the Complaint provides the information this Court is seeking. They argue that the Complaint "clearly states that . . . Plaintiff [sic] contacted the Defendant in writing" and "provided documentary evidence in the form of a formal inquiry through counsel . . . for the purpose of clarifying account errors." (Doc. 13 at 5.) Even resolving all doubts in favor of Plaintiffs, these statements are simply not accurate representations of the contents of the Complaint. In support of these statements Plaintiffs cite exclusively to paragraph 23, but this paragraph refers only to a phone call Plaintiffs allegedly had with the Defendant:

> On 6/10/2010 Mrs. Tallent called in to find out what was happening to the money. She was informed by Representative 'Trinitia' that the additional money was being held in a 'fees due' account. Trinitia refused to say how much money was being held in the account or the purpose of the hold.

(Doc. 8 at 23.) It is clear that this paragraph does not contain any allegation about a QWR having been submitted by Plaintiffs or their counsel, and it certainly does not establish that such a request contained the information required by § 2605(e)(1)(B). Thus, Plaintiffs have failed to identify factual allegations in the Complaint that would satisfy the pleading requirements.

Finally, Plaintiffs have failed to identify any form of damages they allegedly suffered as a result of the alleged RESPA violation. The Eleventh Circuit has held that to state a claim under RESPA, a plaintiff must allege facts showing he suffered actual damages or is entitled to statutory damages. See *Frazile v. EMC Mortg. Corp.*, 382 F. App'x 833, 836 (11th Cir.2010). Additionally, district courts in this circuit have held that a plaintiff must also allege a causal link between the claimed damages and defendant's alleged RESPA violation. *See, e.g.*, *Jackson v. Ocwen Loan Servicing, LLC*, 2012 WL 882493 (S.D. Fla. Mar. 14, 2012) (dismissing RESPA claim with only conclusory statement that he suffered "detriment and financial injury"); *Jenkins v. BAC Home Loan Servicing, LP*, 822 F. Supp 2d 1369, 1377 (M.D. Ga. 2011) (dismissing claim under § 2605(e) where no causal link plead between violation and damages).

Plaintiffs concede that to state a claim "a plaintiff must allege that the loan servicer's breach of RESPA duties resulted in actual damages." (Doc. 13 at 6.) However, Plaintiffs contend that the Complaint adequately alleges damages causally linked to the alleged RESPA violation. In support of this argument, Plaintiffs cite only to paragraph 86, which falls under Count Ten, Slander of Title. Paragraph 86 provides: "All paragraphs of this complaint are incorporated herein as if fully

restated." The Court is not sure if this citation was made in error, but regardless, there can be no doubt that this paragraph does not allege damages causally linked to an alleged violation of RESPA. It is again necessary for the Court to put aside the incorrect statements in Plaintiffs' brief as to the contents of the Complaint and to examine the Complaint itself. Count Eleven lays out the RESPA claim in just four short paragraphs. (Doc. 8 ¶¶ 90–93.) A careful review of these paragraphs demonstrates that none of them identify any damages suffered by Plaintiffs in connection with their RESPA claims. As such, Plaintiffs' RESPA claim is due to be dismissed.

### B.  State Law Claims: Counts One through Ten

Defendant devoted 21 pages of its 30-page brief in support of its motion to dismiss to explain, in detail, why each of Plaintiffs' ten state law causes of action are due to be dismissed.[6] Plaintiffs, in contrast, offered a three paragraph response

---

[6] BANA's motion to dismiss asserts that Plaintiffs' state law claims are deficient because, among other things, Plaintiffs' wrongful foreclosure claim fails to identify any actual foreclosure; the fraud claim is not pleaded with requisite specificity and does not allege reasonable reliance; the breach of contract claim is refuted by the allegations in the complaint and is otherwise so vague as to render a responsive pleading infeasible; the breach of the implied covenant of good faith claim is not a legally cognizable cause of action; the outrage claim does not plead sufficiently egregious conduct as required by Alabama law; the negligence and wantonness claims fail to identify any underlying duty owed; the unjust enrichment and slander of title claims fail to satisfy the requisite pleading requirements on multiple fronts; and the negligent hiring and supervision claim fails for lack of an allegation that BANA had the requisite knowledge of the employees' alleged unfitness. *See generally* Doc. 8.

spanning only two pages, leading off with a heading that reads: "The Plaintiff [sic] Should Not be Required to Defend the Merits of Their Claims in a Motion to Dismiss." (Doc. 13 at 8.) In these short paragraphs, Plaintiffs maintain that pleading standards under *Twombly* are minimal, and that Rule 8 "does not mandate an exhaustive recitation of plaintiff's [sic] reasoning at this stage of the litigation process." (*Id.* at 9.) However, they do not directly respond to any of Defendant's substantive or procedural attacks on their claims.

Because the authority cited by Plaintiffs does not provide as much, the Court is unclear why Plaintiffs feel they are not required defend their claims on a motion to dismiss. Indeed, the Eleventh Circuit has made clear that failure by a plaintiff to respond to a motion to dismiss argument constitutes an abandonment of that claim. *See Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) ("The appellants' failure to brief and argue this issue during the proceedings before the district court is grounds for finding that the issue has been abandoned.").

In *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039 (7th Cir. 1999), the Seventh Circuit was confronted with a similar situation, where a plaintiff responded to a motion to dismiss by simply asserting that she was not "required at this stage of

the litigation to specifically characterize or identify the legal basis of the claims in the complaint" but rather was only required to "assert a colorable claim that has some factual support." *Id.* at 1041. Writing for the court, Judge Posner aptly explained why the district court was correct to dismiss the plaintiff's claims:

> Where the plaintiff has gone astray is in supposing that a complaint which complies with Rule 8(a)(2) is immune from a motion to dismiss. This confuses form with substance. Rule 8(a)(2) specifies the conditions of the formal adequacy of a pleading. It does not specify the conditions of its substantive adequacy, that is, its legal merit. Suppose the complaint had alleged that the defendants had violated Illinois or federal law by failing to obtain a license to manufacture cigarettes. The complaint would comply with Rule 8(a)(2), but, assuming no such license is required, it would be highly vulnerable to dismissal under Rule 12(b)(6). If the defendants filed a motion to dismiss in which they pointed out that there was no such licensing requirement, it would not be responsive of the plaintiff to say that she was not "required at this stage of the litigation to specifically characterize or identify the legal basis of the claims in the complaint." The defendants would have given reasons for dismissing the complaint despite its formal beauties, and she would have to give reasons against. Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning. An unresponsive response is no response. In effect the plaintiff was defaulted for refusing to respond to the motion to dismiss. And rightly so.

*Id.* As Judge Posner clearly explained, it is not the job of this Court to make the arguments on Plaintiffs' behalf, and the Court refuses to do so.

There remains one last issue to address. Plaintiffs attached a *second* amended

complaint to their response brief, and in the last sentence before the conclusion stated: "Should the Court in the alternative require the Plaintiff to defend the merits of its claims in the pleadings, the Plaintiffs respectfully ask the court for leave to Amend its complaint as attached." (Doc. 13 at 9.) The Court is unable to understand the utility of allowing this amendment. First, after reviewing the attached complaint and comparing it with the previously-filed complaint, the Court does not see any reason why the handful of additional allegations would remedy any of the deficiencies asserted by Defendant. Moreover, even if the amendment is allowed, that does not change the fact that Plaintiffs have failed to provide any legal (or even practical) reason in their brief why the attached complaint is in a form sufficient to survive a Rule 12(b)(6) motion to dismiss. Thus, with or without the amendment, this Court's conclusion is the same—Plaintiffs have abandoned the claims they did not defend.

Because Plaintiffs have not offered any substantive response to BANA's arguments for dismissal of the ten state law claims, these claims are deemed abandoned. Thus, Defendant's motion to dismiss is due to be granted with respect to Plaintiffs' state law claims asserted in Counts One through Ten of the Complaint.

## V. Conclusion

For the reasons stated, Defendant's Motion to Dismiss (Doc. 9) is due to be

GRANTED. A separate order will be entered consistent with this opinion.

Done this 21st day of May 2013.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
[170956]